IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE OHIO VALLEY BANK COMPANY,   :
   :    Case No. 2:19-cv-191
      Plaintiff,   :
   :    JUDGE ALGENON L. MARBLEY
    v.   :
   :    Magistrate Judge Vascura
METABANK, dba REFUND   :
ADVANTAGE,   :
   :
      Defendant.   :

## OPINION & ORDER

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 8). Plaintiff, The Ohio Valley Bank Company, filed a response in Opposition to Defendant's Motion. (ECF No. 12). For the following reasons, Defendant's Motion to Dismiss is **DENIED.**

## I.      BACKGROUND

This dispute arises out of an agreement between Plaintiff, Ohio Valley Bank Company, and Fort Knox Financial Services Corporation ("Fort Knox"). (ECF No. 4 at ¶ 1). In 2014, Ohio Valley Bank, an Ohio corporation, and Fort Knox Financial Services, a Kentucky corporation, entered into an Agreement ("Agreement") for processing tax refunds. (ECF Nos. 8-1 at 2; 12 at 2). The Defendant, MetaBank, doing business as Refund Advantage, acquired Fort Knox in 2015 and assumed Fort Knox's agreement with Ohio Valley Bank. (ECF No. 4 at ¶ 2). MetaBank has its headquarters and principal place of business in South Dakota. (ECF No. 4 at ¶ 3).

MetaBank provides software to Electronic Return Originators ("EROs") who use that software to electronically submit tax returns to the IRS and state tax agencies. MetaBank's

1

software allows individuals to choose a "refund transfer" or a "refund advance." With a refund transfer, the taxpayer's tax preparation fees are "deducted from their tax refund." (ECF No. 12 at 3). With a refund advance, MetaBank essentially loans money to the taxpayer based on their refund amount. (Id.). This is where Ohio Valley Bank comes in. Under the Agreement, MetaBank keeps two accounts with Ohio Valley Bank. (Id.). Both a refund advance and a refund transfer "require taxpayer customers to direct the IRS and state taxing authorities to send his/her tax refunds to MetaBank's accounts at Ohio Valley Bank." (Id.). Ohio Valley Bank holds the refund money in the accounts while it processes payments to the relevant parties. In return for these services, "MetaBank pays Ohio Valley Bank a fixed fee per refund." (ECF No. 4 at ¶ 14).

On June 6, 2016, MetaBank reached out to Ohio Valley Bank to amend the fee arrangement in their Agreement. (ECF No. 12 at 4; ECF No. 12 Exs. A, B, E). The amendment left all other "terms and conditions of the Agreement" unchanged. (ECF No. 12-6 at 4). Particularly of note for the purposes of jurisdiction, the Agreement contains an Ohio choice of law provision. (ECF No. 8-2 at 7). The Agreement also provided that MetaBank would process all tax refunds with Ohio Valley Bank. (ECF No. 8-2 at 2, Agreement Section 2.1). The Agreement was set to end on December 31, 2019. (ECF No. 8-2 at ¶ 9).

Also in June 2016, the General Counsel of MetaBank contacted Ohio Valley Bank about the refund transfer documents. (ECF No. 12-1 at 3, Miller Decl. ¶ 12, Exs. G, H). MetaBank and Ohio Valley Bank amended the refund agreements "to ensure that the agreements comply with federal and Ohio regulations to which Ohio Valley Bank was subject." (Id.). Additionally, "MetaBank requested that the agreements include Ohio Valley Bank's privacy policy—in

addition to MetaBank's privacy policy, which was already in the agreements—and that the agreements include an arbitration provision." (ECF No. 12-1 at 3, Miller Decl. ¶ 13).

Ohio Valley Bank alleges that, during tax season, MetaBank and Ohio Valley Bank were in contact daily. MetaBank would direct Ohio Valley Bank on how to disburse the refunds, "including reconciliation and clearing of checks, as well as posting refunds to the accounts of taxpayer customers." (ECF No. 12-1 at 4, Miller Decl. ¶ 16). MetaBank would send a daily automated email. (Id.).

MetaBank's filings with the Securities and Exchange Commission suggested that MetaBank was processing tax returns through one of its own divisions, EPS Financial, rather than through Ohio Valley Bank. (ECF No. 4 at ¶ 22). Ohio Valley Bank asked for an accounting of these tax refunds in September and October of 2018, but MetaBank did not comply with these requests. (ECF No. 4 at ¶¶ 26–27).

In May 2018, MetaBank notified Ohio Valley Bank that it intended to terminate the Agreement on December 31, 2018. (ECF No. 4 at ¶ 16). The Agreement contained a provision that allowed for early termination under certain circumstances, none of which MetaBank satisfied. (ECF No. 4 at ¶ 19). As a result of the breach, Ohio Valley Bank lost revenue it would have collected during the last year of the Agreement. (Id. at ¶ 20).

Ohio Valley Bank sued MetaBank in Ohio state court in December 2018 alleging breach of contract based on the request for early termination and the violation of the exclusivity clause. (ECF No. 8). MetaBank then removed the case to federal court on the basis of diversity jurisdiction. Id. MetaBank moved to dismiss for lack of personal jurisdiction. (ECF No. 8).

## II.    STANDARD OF REVIEW

The plaintiff bears the burden of proving that the court has personal jurisdiction over the defendant. *CompuServe Inc. v. Patterson,* 89 F.3d 1257, 1262–63 (6th Cir.1996). When a defendant has filed "a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (*citing Weller v. Cromwell Oil Co.,* 504 F.2d 927, 930 (6th Cir.1974)). A court evaluating a motion to dismiss for lack of personal jurisdiction has three options: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen*, 935 F.2d at 1458.

The affidavits and documentary evidence submitted in this case are sufficient, without a hearing or additional discovery, to decide this Motion. A hearing is not required "in the absence of complex legal or factual questions." *Rutofske v. Norman*, No. 95-2038, 1997 WL 299382, at *3 (6th Cir. June 4, 1997). Although Ohio Valley Bank requested oral argument, it did not request additional discovery or an evidentiary hearing. The parties agree on the vast majority of facts in this case, and this Court does not find a hearing necessary. When the court rules on a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdiction." *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002) (*quoting Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002)) (internal citation omitted). The plaintiff can make this prima facie showing by "establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to support jurisdiction." *Neogen Corp.,* 282 F.3d at 887 (*quoting Provident Nat'l Bank v. California Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987)).

A court ruling on a Rule 12(b)(2) motion to dismiss without a hearing or additional discovery "construe[s] the facts in the light most favorable to the nonmoving party." *Neogen Corp.*, 282 F.3d 883, 887 (6th Cir. 2002). Significantly, "this [C]ourt will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Id.* But it "may consider the defendant's undisputed factual assertions." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). This rule "prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen,* 935 F.2d at 1459.

### III.    ANALYSIS

A federal court sitting in diversity jurisdiction has personal jurisdiction over a defendant if jurisdiction is "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 888 (6th Cir.2002) (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994)). The Sixth Circuit has "recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits," and has "consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice.'" *Bird,* 289 F.3d at 871 (*quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Although the Ohio long-arm statute does not extend jurisdiction to the full reach of the Fourteenth Amendment Due Process Clause, a finding that jurisdiction is authorized under the Ohio long-arm statute does not obviate the need for a Due Process Clause analysis. *See Brunner v. Hampson*, 441 F.3d 457, 467 (6th Cir. 2006) (citing *Hall v. Tucker*, 161 Ohio App.3d 245, 829 N.E.2d 1259, 1266 (2005)).

## A. General Versus Specific Jurisdiction

Personal jurisdiction can be general or specific.  For purposes of federal law, a court has general jurisdiction if a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  Specific jurisdiction, on the other hand, acknowledges that "'the commission of some single or occasional acts of the corporate agent in a state' may sometimes be enough to subject the corporation to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *International Shoe*, 326 U.S. at 318).

Although "courts within the Sixth Circuit have come to inconsistent, and in some cases directly contradictory, conclusions on whether Ohio law recognizes general jurisdiction," *Conn*, 667 F.3d at 717, more recently, the Sixth Circuit has doubted the availability of general jurisdiction under Ohio law.  *Id.*  This Court has similarly found.  *Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F.Supp.2d 657, 665 (S.D. Ohio 2011) (finding that "personal jurisdiction under the long arm statute must be specific rather than general").  Regardless, this Court must still address general jurisdiction under federal law.

This Court does not have general jurisdiction over MetaBank.  Ohio Valley Bank argues, in a footnote, that MetaBank's contacts with Ohio are sufficient for this Court to exercise general jurisdiction over MetaBank.  But general jurisdiction is reserved for a rare set of circumstances. As the Supreme Court has clarified, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, . . . the place of incorporation and principal place of business." *Daimler AG*, 571 U.S. at 137.  The benefit of

looking to the place of incorporation and principal place of business is that "each ordinarily indicates only one place" and each is "easily ascertainable." *Id.* General jurisdiction based on contacts other than the place of incorporation and principal place of business is the "exceptional case." *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017) (citing *Daimler*, 571 U.S. at 139 n.19).

MetaBank's contacts with Ohio do not constitute an "exceptional case" for general jurisdiction. Even taking Ohio Valley Bank's facts as true, MetaBank's contacts with Ohio consist of a contract with Ohio Valley Bank, communications to Ohio Valley Bank staff, transactions involving MetaBank that were processed in Ohio, and some ATMs. These contacts do not render MetaBank essentially at home in Ohio. Thus, personal jurisdiction over MetaBank can only be based on specific jurisdiction.

### B. Ohio's Long-Arm Statute

The Ohio Revised Code allows Ohio courts to exercise personal jurisdiction over a non-resident if the cause of action arises from the non-resident: (1) transacting any business in the state; or (2) contracting to supply services or goods in the state. Ohio Rev. Code Ann. § 2307.382(A)(1)–(2), (C) (2019).

### 1. Transacting any Business

Transacting business is interpreted broadly. *Brunner*, 441 F.3d at 464 (citing *Ricker v. Fraza/Forklifts of Detroit*, 160 Ohio App.3d 634, 639 (2005)). The Supreme Court of Ohio has defined "transact business" as "a broader term than the word contract" and means to "prosecute negotiations; to carry on business; or to have dealings." *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990). Courts examine three factors when determining whether a non-resident defendant has transacted business under the Ohio statute: (1)

"whether the out-of-state defendant initiated the dealing," *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, No. 5:09-cv-2613, 2011 WL 711568, at *5 (N.D. Ohio Feb. 22, 2011) (citing *Paglioni & Assocs., Inc. v. WinnerComm, Inc.*, No. 2:06-cv-00276, 2007 WL 852055, at *9 (S.D. Ohio Mar. 16, 2007)); (2) "whether the parties conducted their negotiations or discussions in the forum state, or with terms affecting the forum state," *id.*; and (3) whether the defendant has a "substantial connection" to Ohio. *Hitachi Med. Sys. Am., Inc.*, 2011 WL 711568, at *6 (citing *Shaker Constr. Grp., LLC. v. Schilling*, No. 1:08cv278, 2008 WL 4346777, at *3 (S.D. Ohio Sept. 18, 2008)). The defendant need not "have a physical presence in Ohio" to be transacting business there. *MJM Holdings, Inc. v. Sims*, 9th Dist. Summit No. 28952, 2019-Ohio-514, at ¶ 14.

Although MetaBank was not the initial party to the Agreement with Ohio Valley Bank, MetaBank nevertheless initiated negotiations over an amendment to the Agreement in 2016. These amendments reaffirmed that the other terms of the Agreement would remain unchanged. Additionally, MetaBank contacted Ohio Valley Bank to revise the refund transfer agreements. Thus, MetaBank initiated contact with Ohio Valley Bank, although it did so about a pre-existing business relationship that it had not initially negotiated.

This Court also looks to "whether the parties conducted their negotiations and communications in Ohio or based upon terms affecting Ohio." *MJM Holdings, Inc.*, 2019-Ohio-514, at ¶ 14. If these requirements are met, "the non resident transacted business in Ohio, provided there is 'some continuing obligation that connects the non resident defendant to the state or some terms of the agreement that affect the state.'" *Russian Collections, Ltd. v. Melamid*, No. 2:09-cv-300, 2009 WL 4016493, at *3 (S.D. Ohio Nov. 18, 2009) (quoting *Shaker Const. Group, LLC v. Schilling*, 1:08cv279, 2008 WL 4346777, at *3 (S.D. Ohio Sept. 18,

2008)).  A non-resident defendant need not be physically present in Ohio while conducting

negotiations or communications; it is sufficient if the non-resident defendant, sitting out of state,

sent communications into the state for purposes of negotiation.  *See, e.g.*, *MJM Holdings Inc.*,

2019-Ohio-514, at ¶ 23 (finding personal jurisdiction where defendant emailed the plaintiff in

Ohio, "forwarded the executed agreements and opinion letter to Ohio,"  "the agreements were all

based upon Ohio law, . . . and the [] [d]efendants had continuing duties following the execution

of the agreements which connected them to Ohio.").

MetaBank's dealings with Ohio Valley Bank meet these requirements.  The parties

negotiated the amendment via phone and email.  MetaBank then sent the executed agreement,

via email, to Ohio Valley Bank in Ohio.  The Agreement between MetaBank and Ohio Valley

Bank was governed by Ohio law and obligated MetaBank to make regular payments to Ohio

Valley Bank.  Indeed, the amendment to the Agreement dealt with those very fee obligations.

(ECF No. 12-6 at 4).  MetaBank also worked with Ohio Valley Bank to update the refund

transfer agreements.  This was also done via email.  These contacts constitute "transacting

business" in Ohio.  *See Hammill Mfg. Co. v. Quality Rubber Prods., Inc.*, 82 Ohio App. 3d 369,

374 (6th Dist. 1992) (finding a nonresident defendant transacts business in Ohio when it

"initiates, negotiates a contract, and through the course of dealing becomes obligated to make

payments to an Ohio corporation.").

MetaBank must also have a substantial connection with Ohio before it can be said to have

transacted business there.  Few cases have addressed this substantial connection requirement

under the Ohio long-arm statute.  Recently, one Ohio court stated that "courts have considered

several factors" in deciding whether a defendant has a substantial connection with Ohio

"including, but not limited to, whether the nonresident (1) initiated the business dealings, (2)

participated in business negotiations, (3) ordered work to be performed in Ohio, and (4) remitted payments to or owed other obligations in Ohio." *North Am. Software, Inc. v. James I. Black & Co.*, 11th Dist. Hamilton No. 2011-Ohio-3376, ¶ 15.

Cases have found jurisdiction under the Ohio long-arm statute appropriate based on contacts that are arguably fewer than MetaBanks. For example, in *U.S. Sprint Commc'ns Co. Ltd P'ship v. Mr. K's Foods, Inc.*, the Ohio Supreme Court found jurisdiction under the long-arm statute "over a foreign corporation in order to settle the unpaid long distance telephone service bills owed to another nonresident when a significant number of the charges arose in Ohio and goods were shipped into the state as a result." *U.S. Sprint Commc'ns Co. Ltd P'ship v. Mr. K's Foods, Inc.*, 68 Ohio St. 3d 181, 624 N.E.2d 1048 (Ohio 1994). Here, Ohio Valley Bank is claiming breach of a contract under which MetaBank was required to make regular payments to a bank in Ohio and facilitated numerous transactions in Ohio—based on the refunds processed there for taxpayers across the country. That MetaBank was offering its tax processing services nationwide does not necessarily mitigate the fact that it had connections with Ohio. *See, e.g.*, *U.S. Sprint Commc'ns Co. Ltd P'ship*, 624 N.E.2d at 1052 (noting that the Defendant had the same type of business relationship in New York, Pennsylvania, Delaware, Michigan, and Illinois). *See also Ky. Oaks Mall Co. v. Mitchell Formal Wear*, 559 N.E.2d 477, 480 (Ohio 1990) (finding personal jurisdiction where defendant entered into ten-year lease agreement with Ohio LLP, and mailed checks to Ohio for a storage facility in Kentucky). Here, MetaBank by amending its Agreement with Ohio Valley Bank, reaffirmed its contract and anticipated future dealings and obligations to a company in Ohio. This is sufficient for personal jurisdiction under the Ohio long-arm statute.

### 2. *Contracting to Supply Services in the State*

The Ohio long-arm statute also allows for jurisdiction over defendants for acts arising from "contracting to supply services or goods" in Ohio.  O.R.C. § 2307.382(A)(2).  Ohio Valley Bank argues that MetaBank contracted to supply goods or services in Ohio because MetaBank maintained bank accounts with Ohio Valley Bank in Ohio, sent the tax refunds that it was facilitating to Ohio Valley Bank, and paid Ohio Valley Bank out of the accounts it maintained in Ohio.  (ECF No. 12 at 12–13).

These contacts do not constitute contracting to supply goods or services in Ohio.  These contacts establish that Ohio Valley Bank provided services to MetaBank in Ohio, but not vice versa.  While MetaBank could be said to be supplying services to Ohio taxpayers by making its software available to EROs who then process tax filings for Ohio residents, Ohio Valley Bank does not allege that those are the contacts that constitute supplying goods or services in Ohio.  Neither would those contacts suffice for personal jurisdiction under ORC 2307.382(A)(2) because the cause of action here arose out of the breach of contract between MetaBank and Ohio Valley Bank, not MetaBank's provision of tax services.  Because this Court finds that MetaBank was transacting business in Ohio, whether MetaBank was contracting to supply goods and services in Ohio is inconsequential.

### 3. *"Arising from" Requirement*

In addition to transacting any business in Ohio, Ohio Valley Bank must show that the cause of action arises from those contacts.  Because the Ohio long-arm statute does not extend to the full reach of the Due Process Clause, the Sixth Circuit has interpreted the "arising under" requirement of the Ohio long-arm statute more narrowly than the "arising under" requirement for the federal Due Process Clause analysis.  *Brunner*, 441 F.3d at 465–66.  Thus, "the long-arm

statute requires a 'proximate cause' relationship between a plaintiff's [] injury claim and the defendant's conduct in Ohio." *Id.* at 466. *See also Hawes v. Macy's Inc.*, No. 1:17-cv-754, 2018 WL 4680813, at *3 (S.D. Ohio Sept. 28, 2018). An action proximately causes a result if "the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act." *Jeffers v. Olexo*, 539 N.E.2d 614, 617 (1989) (quoting *Ross v. Nutt*, 203 N.E.2d 118, 120 (1964)).

MetaBank's contacts with Ohio proximately caused Ohio Valley Bank's alleged injury. MetaBank's contacts consisted, in part, of negotiating an amendment to their pre-existing Agreement with Ohio Valley Bank. Under that Agreement, Ohio Valley Bank performed services for MetaBank, and MetaBank made regular payments to Ohio Valley Bank. The amendment that the parties negotiated additionally left the remaining contract terms unchanged. These terms included the duration of the contract and the exclusivity provision. Ohio Valley Bank alleges that MetaBank breached the agreement by terminating the relationship early and by not abiding by the exclusivity provision. Typically, where contacts with the forum state include a contract, breach of that contract is said to "arise from" the contacts. *See, e.g.*, *Tharo Sys, Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 369–70 (6th Cir. Aug. 24, 2006) (finding that, because an agreement formed the basis of a defendant's contacts with Ohio, the claim for breach of the agreement arose from those contacts).

MetaBank argues that the cause of action does not arise out of its contacts with Ohio because the Amendment related to a small part of their Agreement—the fee schedule. But when MetaBank terminated the Agreement, it also terminated the fee schedule that the parties

negotiated.  Additionally, the amendment left the remainder of the Agreement the same.  Nor

was that the only contact.  MetaBank was in frequent contact with Ohio Valley Bank, and

MetaBank sent payments to Ohio Valley Bank in Ohio.  MetaBank and Ohio Valley Bank had an

ongoing business relationship.  That relationship forms the basis of MetaBank's contacts with

Ohio.  Thus, a breach of the agreement that created that relationship can be said to arise out of

MetaBank's contacts with Ohio.  Jurisdiction is proper under the Ohio long-arm statute.

### C.  Due Process

Exercising personal jurisdiction over an out-of-state defendant must also comply with the

Due Process Clause of the Fourteenth Amendment.  Specific jurisdiction is authorized if the

following three requirements are met:

> First, the defendant must purposefully avail himself of the privilege of acting in
> the forum state or causing a consequence in the forum state.  Second, the cause of
> action must arise from the defendant's activities there.  Finally, the acts of the
> defendant or consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise of jurisdiction over
> the defendant reasonable.

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *S. Machine Co. v.
Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### 1.  Purposeful Availment

Several courts have found "that the Ohio 'transacting any business' standard is

coextensive with the purposeful availment prong of constitutional analysis." *Burnshire*

*Development, LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006).  *See*

*also DCM Group, Inc. v. Ebix, Inc.*, No. 2:17-cv-740, 2018 WL 7290826, at *6 (S.D. Ohio Dec.

13, 2018).  Because MetaBank was transacting business in Ohio, MetaBank also purposefully

availed "itself of the privilege of conducting activities within" Ohio.  *Hanson v. Denckla*, 357

U.S. 235, 253 (1958).  This is consistent with Sixth Circuit precedent.  *See, e.g.*, *Cole v. Mileti*,

133 F.3d 433, 436 (6th Cir. 1998) ("[i]f . . . a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio.").  As this Court has found before, "[w]here a party enters into a contract governed by Ohio law and purposefully perpetuates the contractual relationship via electronic and other communications, that party 'should have reasonably foreseen that doing so would have consequences in Ohio.'"  *ALTA Analytics, Inc. v. Muuss*, 75 F.Supp.2d 773, 780 (S.D. Ohio 1999) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996)).

*Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000) is distinguishable.  There, the Sixth Circuit found that Rowlette had not purposefully availed himself of the privilege of doing business in Ohio, stating "that the mere existence of a contract between Rowlette and an Ohio citizen for seventeen months is insufficient to confer personal jurisdiction over Rowlette."  *Id.* at 722.  Calphalon, an Ohio corporation, and Rowlette had an agreement for Rowlette to be "the exclusive manufacturer's representative for Calphalon in the states of Minnesota, Iowa, North Dakota, South Dakota, and Nebraska."  *Id.* at 720.  Rowlette was responsible for marketing and selling Calphalon's products, "keep[ing] Calphalon informed of market conditions, and [] develop[ing] sales plans for customers."  *Id.*  Rowlette had communicated with Calphalon "via telephone, fax, and mail," and attended two in-person meetings in Ohio.  Additionally, the agreement stated that Ohio law would govern the interpretation of the agreement.  When Calphalon told Rowlette it was not renewing the agreement, Rowlette's lawyer sent a letter to Calphalon about Rowlette's claims.  The Sixth Circuit found that Rowlette had not purposefully connected himself with Ohio, rather "Rowlette would have served as Calphalon's representative

in the designated states, regardless of Calphalon's base of operation." *Id.* at 723. Thus, the contacts were random, fortuitous, and attenuated. *Id.*

MetaBank argues, based on *Calphalon*, that it was connected to Ohio solely because Ohio Valley Bank decided to be located there, and "[t]he Agreement contemplates services nationwide that could be performed from any state." (ECF No. 19 at 15). But MetaBank has the relationship backwards. MetaBank is Calphalon in this situation—it hired Ohio Valley Bank (Rowlette) to perform services in Ohio. Thus, *Calphalon* is inapposite. The correct analogy would be if Rowlette sued Calphalon in one of the states where Rowlette was working. Additionally, MetaBank tied itself to Ohio when it assumed an Agreement with an Ohio company, perpetuated that Agreement by requesting an Amendment, and continually communicated with that company to process refunds from around the country. MetaBank's contacts with Ohio are not random, fortuitous, or attenuated.

MetaBank makes much of the fact that Fort Knox initially negotiated and concluded the contract with Ohio Valley Bank and that MetaBank was merely assigned this preexisting contract. (ECF No. 8-1 at 10). Few courts have addressed the effect of an assignment on personal jurisdiction. The Seventh Circuit, however, has distinguished between an assignee and a corporate successor. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003). Typically, a corporate successor "can be expected to be hailed into the same courts as its predecessor" because "the successor corporation has chosen to stand in the shoes of its predecessor and has chosen to accept the business expectations of those who have dealt previously with that predecessor." *Id.* The Sixth Circuit has similarly held. *See Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (noting the applicability of "the alter-ego theory of personal jurisdiction to parent-

subsidiary relationships").  An assignee, however, "does not step automatically into the shoes of the assignor for purposes of personal jurisdiction."  *Id.*  That is because an assignee "purchases certain specific contractual rights and assumes certain specific obligations."  *Id.*

It is not clear whether MetaBank acquired all or only a portion of Fort Knox.  The Declaration of Larry Miller, the Chief Operating Officer of MetaBank states merely that "MetaBank acquired the assets and liabilities of Fort Knox Financial Services Corporation ("Fort Knox") and assumed the agreement formerly between Ohio Valley Bank and Fort Knox (the "Agreement")."  (ECF No. 12-1 at 1).  This Court need not decide whether MetaBank was a successor or merely an assignee because MetaBank's contacts, on their own, are sufficient to establish personal jurisdiction.

Even assuming that MetaBank is merely an assignee, MetaBank's contacts are, on their own, sufficient to show purposeful availment.  As one court has stated,

> [T]he *assignee* must "purposefully establish[ ] minimum contacts with the forum," as determined through a "highly realistic" analysis that considers the assignee's "prior negotiations and contemplated future consequences, along with the terms of the [assignment] and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479. If the assignee has taken an interest in real property in the district, or if the assignment was executed in the district, or if the assignee receives an income stream from the district, or other similar connections to the forum are present, then exercising personal jurisdiction over the assignee may be appropriate.

*Brit UW, Limited v. Manhattan Beachwear, LLC*, 235 F.Supp.3d 48, 58 (D.D.C. 2017).

Here, MetaBank negotiated an amendment to the Agreement in 2016.  This amendment reaffirmed the continuing obligations that the parties had to each other.  Under the Agreement, MetaBank was to have refunds sent to Ohio Valley Bank for processing.  MetaBank contacted Ohio Valley Bank to revise the refund transfer agreements.  These contacts differentiate this case from *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 512 (6th Cir. 2006), where the Sixth

Circuit found contacts insufficient where the defendant "never entered into any negotiated with [plaintiff] regarding the terms of the lease, let alone direct negotiations. Instead, [defendant] became involved with [plaintiff] simply by virtue of the assignment of the leases . . . ." *Id.* Here, MetaBank was not a passive assignee.

### 2. Arising From

In addition to purposeful availment, "the cause of action must arise from the defendant's activities" in the forum state. *Calphalon Corp.*, 228 F.3d at 721 (citing *S. Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The "arising from" test for purposes of federal due process is a "lenient standard." *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 553 (6th Cir. 2007) (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). Where, as here, a court has found that a contractual relationship with ongoing obligations to Ohio is sufficient to show purposeful availment, a "cause of action [] for breach of that contract . . . naturally arises from the defendant's activities in Ohio." *Cole v. Mileti*, 133 F.3d at 436. Here, MetaBank's contacts with Ohio, through its contractual relationship with Ohio Valley Bank, meet the requirements of purposeful availment. Because Ohio Valley Bank is suing for breach of that contract, the cause of action arises from MetaBank's contacts with Ohio.

At least one court has interpreted *Calphalon Corp.* as requiring that "the actual breach of the contract must have occurred in the state where the plaintiff is bringing the action to satisfy the 'arising from' test." *Paglioni & Assocs., Inc. v. WinnerComm, Inc.*, No. 2:06-cv-00276, 2007 WL 852055, at *8 (S.D. Ohio Mar. 16, 2007). To be sure, some cases have stated that a breach of contract for failure to pay occurs in the state where the defendant is located, but those cases are distinguishable. In *Kerry Steel, Inc. v. Paragon Indus., Inc.*, the Sixth Circuit noted that "[t]he refusal to pay" underlying the breach "occurred in Oklahoma." *Kerry Steel, Inc. v.*

*Paragon Indus., Inc.*, 106 F.3d 147, 152 (6th Cir. 1997). But there, the agreement between the parties was "nothing more than an isolated transaction." *Id.* at 151. In *Paglioni & Assocs., Inc.*, the court had already found that the defendant had not purposefully availed itself of the privilege of conducting business in Ohio before it reached the question of whether the breach of contract claim arose out of the defendant's activities in Ohio. Additionally, in *Paglioni & Assocs., Inc.*, the contacts were less substantial than MetaBank's contacts here. In *Paglioni & Assocs., Inc*, the defendant, WinnerComm, had an agreement with Paglioni whereby Paglioni "would take companies who wanted to purchase sponsorships or commercials and direct them to advertise their products on WinnerComm's television broadcasts." *Paglioni & Assocs., Inc.*, 2007 WL 852055, at *1. Paglioni would then receive a commission. But Paglioni provided no documentation for the contract, and "[p]ayment to Paglioni in Ohio was the only connection between WinnerComm and Ohio." *Id.* at *9 – 10. Here, MetaBank was routinely sending money through Ohio, for the purposes of furthering its own tax business. Additionally, the breach here is not for failure to pay. The breach is for early termination and for violating the exclusivity provision of the contract.

This case is more similar to *Norcold, Inc. v. Greg Lund Products Ltd.*, 109 F.Supp.2d 819, 826 (S.D. Ohio 2000). *Norcold, Inc.* also involved a breach of contract, where "the alleged failure to pay the purchase price occurred in Canada." *Norcold, Inc.*, 109 F.Supp.2d at 826. There, the Court found that other factors outweighed the location of the breach. Specifically, "the parties repeatedly and over an extended period of time entered into contracts whereby [the defendant] would purchase [plaintiff's] products to distribute in Canada," plaintiff had its principal place of business in Ohio, "[d]efendant's purchase orders were sent to Ohio, Plaintiff's manufacturing plant and products were located in Ohio, and Plaintiff arranged for the shipment

18

of its goods from Ohio to Defendant in Ontario." *Id.* Similarly here, MetaBank and Ohio Valley Bank had a relationship characterized by repeated transactions, Ohio Valley Bank was located in Ohio, and MetaBank caused taxpayer refunds to be sent to Ohio Valley Bank where they were processed. Therefore, breach of the Agreement arose out of MetaBank's contacts with Ohio.

MetaBank relies on *Gering v. Fraunhofer USA, Inc.*, in which the court found that the cause of action did not arise out of the defendant's contacts with Michigan. *Gering v. Fraunhofer USA, Inc.*, No. 05-CV-73458, 2007 WL 1017039, at *4 (E.D. Mich. Mar. 29, 2007). In *Gering*, however, as in *Kerry Steel*, the defendant had a contract for a particular discrete service from plaintiff—that "[p]laintiff would be paid a commission for negotiating a settlement of litigation in Minnesota." *Id.* at *1. The defendant did not pay, and instead deposited the entirety of the settlement amount into a subsidiary's bank account in Michigan. The Eastern District of Michigan noted that such "failure to pay Plaintiff occurred prior to and independent of its decision to channel funds through the State of Michigan." *Id.* at *4. The court noted that the use of a bank account in Michigan could not supply the requisite contacts for personal jurisdiction because "[t]he mere act of channeling funds to Plymouth, Michigan, would not harm Plaintiff, nor does it give rise to a cause of action under the theories pled by Plaintiff." *Id.* Here, in contrast, MetaBank's contacts are not merely the use of a bank account in Ohio. Rather, MetaBank had an ongoing relationship with Ohio Valley Bank, and the cause of action is for breach of the contract that created that relationship.

### 3. Substantial Connection

The last requirement for the exercise of personal jurisdiction over a defendant is that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant

reasonable." *Calphalon Corp.*, 228 F.3d at 721 (citing *S. Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d at 381. Where, as here, "the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *First Nat. Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982) (citing *Southern Machine Co.*, 401 F.2d at 384). In deciding reasonableness, the Sixth Circuit has focused on "three factors: 'the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.'" *City of Monroe Employees Ret. Sys. v. Bridgestone*, 399 F.3d 651, 666 (6th Cir. 2005) (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113 (1987)). Additionally, "[i]n performing this balancing of interests, we keep an eye towards 'the interstate judicial system's interest' in judicial economy and 'the shared interest of the several States in furthering fundamental substantive social policies.'" *City of Monroe Employees Ret. Sys.*, 399 F.3d at 666 (quoting *Asahi*, 480 U.S. at 113). A defendant attempting to show that exercising personal jurisdiction would be unreasonable "must present a compelling case." *Burger King*, 471 U.S. at 477. But "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Burger King*, 471 U.S. at 478 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223–24 (1957)).

MetaBank has not argued that it would be burdensome to defend this suit in Ohio. Although MetaBank is headquartered in South Dakota, "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957). Ohio has an interest in resolving this dispute. Plaintiff is a company headquartered

in Ohio, and MetaBank had obligations to that company. *See Contech Bridge Sols., Inc. v. Keaffaber*, No. 1:11-cv-216, 2011 WL 5037210, at *10 (S.D. Ohio Oct. 24, 2011) ("Ohio also has interests related to the alleged breach of the agreement, which is governed by Ohio law, and which was written to protect an Ohio corporation with its principal place of business in Ohio."). And, "any state has an interest in resolving a contract dispute between one of its citizens and a non-resident involving substantial business transactions, especially when they are funneled through an Ohio bank." *Mimco Inc. v. Virginia Iron & Metal Recycling, Inc.*, 840 F.Supp. 1171, 1174 (S.D. Ohio 1993). As to the interstate judicial system's interest, "keeping the case moving forward in this Court rather than starting all over again . . . seems to be the most efficient use of everyone's time and efforts." *Contech Bridge Sols., Inc.*, 2011 WL 5037210, at *10. States have "an interest in furthering fundamental social policies by efficiently and fairly resolving disputes between citizens of different states." *ALTA Analytics, Inc. v. Muuss*, 75 F.Supp.2d 773, 782. This Court finds no compelling case for finding the exercise of personal jurisdiction here unreasonable.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED**.

> **IT IS SO ORDERED.**

>       __s/ Algenon L. Marbley__
> **ALGENON L. MARBLEY**
> **UNITED STATES DISTRICT JUDGE**

**DATED:  September 20, 2019**